IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**MEKAIL THOMAS and**
**EREAON SMITH**                                                                                                    **PLAINTIFFS**

**VS.**                                                                 **CIVIL ACTION NO.** 2:19-cv-112-KS-MTP

**THE CITY OF LAUREL MISSISSIPPI; THE**
**LAUREL POLICE DEPARTMENT; TOMMY COX;**
**MITCH SUMRALL; KEITH BLANCETT; JOSH**
**FREEMAN, SKYLAR PRUNERA; BRIAN HANCOCK;**
**and JOHN DOES, 1-10**                                                                                 **DEFENDANTS**

COMPLAINT
THE PLAINTIFFS DEMAND A TRIAL BY JURY

COMES NOW, the Plaintiffs, Mekail Thomas and Ereaon Smith, in the above styled and numbered civil action, who by and through counsel of record, J. Stewart Parrish and Bobby Moak, file this Complaint against the aforementioned Defendants. In support of the same, the Plaintiffs state, avers and gives notice of the following:

PARTIES

1. The City of Laurel is a municipality within the bounds of the Southern District of Mississippi who may be served with process upon the municipal clerk, Mary Ann Hess.

2. The City of Laurel Police Department is a subdivision of the City of Laurel who may be served with process upon the Chief of Police, Tommy Cox.

3. Tommy Cox is the Chief of Police for the City of Laurel and is also an adult resident and citizen of the state of Mississippi upon whom process may be served wherever he may be found.

1

4. Each of the next listed Defendants are officers and agents of the Laurel Police Department acting in their individual and professional capacities likewise they are citizens of the state of Mississippi and may be served with process wherever they may be found.

5. The fictional Defendants, John Does 1-10, are persons who are currently unknown to the Plaintiffs but upon information and belief are officers and agents of the Laurel Police Department and adult resident citizens of the Southern District of Mississippi who may be served with process wherever they may be found. Plaintiffs specifically reserved the right to name these Defendants as their identities and participation in this cause of action may be discovered.

STATEMENT OF FACTS

6. Plaintiff's claims arise from an incident that occurred on or about May 31, 2019 which resulted in severe personal injuries to the Plaintiffs.

7. Mr. Thomas' address at the time of the incident was 248 Walters Road, Ellisville, Mississippi, 39437.

8. Mr. Smith's address at the time of the incident was 1210 N. 4th Avenue, Laurel, Mississippi, 39440.

9. On or about midnight, May 31, 2019, Mr. Thomas and Mr. Smith had left their employment at Howard Industries after completing the evening shift. Mr. Thomas was the owner and operator of the vehicle and Mr. Smith was his passenger.

10. Upon leaving their place of employment enroute to their dwellings, Plaintiffs encountered an unconstitutional roadblock disguised as a traffic safety checkpoint which was authorized and conducted by officers of the Laurel Police Department.

11. Upon encountering the roadblock, Mr. Thomas produced his current valid Mississippi driver's license and his proof of insurance. Both Plaintiffs were wearing their seatbelts.

Additionally, Mr. Thomas' vehicle had a current tag and was in proper running order, i.e., there were no legally required illumination devices malfunctioning or any other violations which would cause Mr. Thomas to be in violation of any traffic law.

12. Without any reasonable suspicion of any criminal wrongdoing or any other legal cause to continue the detention of the Plaintiffs, Mr. Thomas was directed to pull his vehicle to the side of the road. Mr. Thomas complied.

13. Once on the side of the road, both Plaintiffs were ordered out of the vehicle for no given reason.  Both Plaintiffs complied and exited the vehicle at the direction of the law enforcement officers.

14. Without any articulable reasonable suspicion that a crime was afoot, Plaintiffs were ordered to place their hands upon the vehicle. Plaintiffs complied though neither Plaintiff was armed with a deadly weapon as they were searched and then arrested. No reason for the arrest was given.

15. After the arrest, the officers then asked Mr. Thomas for permission to conduct a search of his vehicle which he granted. The police then searched Mr. Thomas' vehicle. Upon completion of the search, one of the officers approached Mr. Thomas and said to him, "I told you to be honest with me, boy." Mr. Thomas replied that he had been honest with the officer and that he had answered every question truthfully.

16. At this point an officer utilized his taser against Mr. Thomas although Mr. Thomas was not resisting and was in handcuffs. Due to the shock of the taser Mr. Thomas fell to the ground. At that point Mr. Thomas began to protest as to the reason for the tasing and was tased again, it is believed by another officer.

17.     Mr. Thomas began to continue to verbally protest and attempted to crawl into the roadway so as to make himself visible to other bystanders as he, at that juncture, was in fear for his life.

18.     During this period of time, Mr. Smith was thrown to the ground causing him to land upon his face as his hands were cuffed behind his back.

19.     As Mr. Thomas continued to crawl away while handcuffed and after being tased he was tased again. Mr. Thomas continued to protest this violent and unexplained treatment at which point he was shot in the back by one of the officers attending the roadblock. The bullet passed through his body narrowly avoiding many major organs but coming within fractions of an inch of his spine. Mr. Smith was dragged to a police car and locked in the back seat.

20.     An ambulance was called for Mr. Thomas and he was transported to a local hospital.

21.     At that point, an agent with the Mississippi Bureau of Investigations came to the hospital, apparently in the course of his investigation, and at that juncture ordered that the handcuffs of the thrice tased and shot Mr. Thomas be removed. Mr. Smith was transported to jail and held approximately five (5) hours at which point he was released without any charges or any explanation for why this occurred to him. Mr. Thomas was ultimately transported to University of Mississippi Medical Center where he was treated and eventually released. Since that time, Mr. Thomas has been paralyzed in his right leg and is unable to work.

22.     At this juncture, some two (2) months after the incident, no charges have been filed against either Plaintiff.

## JURISDICTION

23. Jurisdiction and venue are proper in this Court. The causes of action alleged herein arise out of actions and/or omissions which occurred and/or accrued, in whole or in part, in Laurel, Mississippi.

## VENUE

24. Venue and jurisdiction are proper in this Court as this is an action arising under the laws of the United States, specifically 42 USC Section 1983 and the Fourth Amendment to the United States Constitution. This Court also has jurisdiction over the pendent state law claims.

## CLAIMS

### INTENTIONAL NEGLIGENCE AND OUTRAGEOUS CONDUCT

25. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing paragraphs.

26. The City of Laurel, the Laurel Police Department, Mitch Sumrall, Keith Blancett, Josh Freeman, Skylar Prunera, Brian Hancock, and John Does, 1-10 and others or entities whose identities are unknown, negligently engaged in a forced unnecessary altercation which caused the severe injuries to Mr. Thomas. As a result of the severe injuries from the negligence of parties herein named, Mr. Thomas suffered long lasting health and medical issues.

27. The hiring of personnel for Laurel Police Department, adhering to rules and regulations along with negligent hiring are all relevant issues not complied with by the Defendants.

28. This incident was contrary to and in violation of the policies of the Laurel Police Department.

29. The Laurel Police Department allowed officers to act in a negligent and or reckless

manner while conducting an illegal and unconstitutional roadblock so as to cause harm to the Plaintiffs.

30. This incident was contrary to and in violation of the policies of the Laurel Police Department.

31. At all times relevant, Thomas was handcuffed and under control of the arresting officers for the Defendants.

32. Al all times relevant, Smith was under total control and in custody of the arresting officers of the defendants.

33. The City of Laurel and the Laurel Police Department was negligent in allowing acts outside normal and standard operating procedures which were all in reckless disregard of the safety and well-being of persons within the premises they control.

34. Defendants were responsible for the manner in which the incident was allowed and conducted.

## GROSS NEGLIGENCE

35. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing paragraphs.

36. The use of force in apprehending, tasing and shooting of a subject without just cause is a grossly negligent act that caused injury and damage to Plaintiffs.

37. The adherence and allowance of uncontrolled actions by agencies of the state/county institutions led to the injuries complained of by the Plaintiff.

38. The Defendants failed to conduct their "roadblock" in a safe and prudent manner so as to avoid harming the Plaintiffs.

PUNITIVE DAMAGES

39. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing paragraphs.

40. Defendants failed to train, supervise, hire and/or have in place procedures and or failed to follow policy guidelines as such causing the Plaintiff injury and damages.

41. The Defendants have acted in complete disregard for the Plaintiffs by acting in a negligent and/or grossly negligent manner as previously described herein.  The actions of the Defendants warrant punitive damages.

42. The Defendants' actions exhibited negligence and/or gross negligence and direct disregard of the Plaintiffs. Punitive damages should be awarded against the Defendants' tortuous actions in order that they be punished in order to keep others from acting in such a manner in the future that could cause harm to persons within the jurisdictions of the Defendants.

43. This incident is but one in a history of police brutality involving officers of the Laurel Police Department. *See*, attached article involving a prior brutality complaint which resulted in a termination of two Laurel Police Department officers in May, 2018, attached hereto as Exhibit "A" and incorporated herein for all purposes as if copied in full and words and figures.

44. The Defendants have acted in a manner that constitutes a pattern of behavior that has not been remedied by the Defendants since past acts.

COUNT I

FAILURE TO ADEQUATELY TRAIN & SUPERVISE LAW ENFORCEMENT OFFICERS – EXCESSIVE FORCE/USE OF WEAPONS

45. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing paragraphs.

7

46. Defendants Laurel Police Department are tasked with the non-delegable duty and responsibility to formulate, oversee and implement official policies, procedures, practices and customs to ensure its law enforcement officers are properly trained and supervised. Defendants City of Laurel and Laurel Police Department failed to provide adequate and competent training and/or supervision to its law enforcement officers, particularly with regard to the use of force and use of tasers on or before the date in question.

47. As a direct and proximate cause of Defendants Laurel Police Department's failure to properly develop, implement and otherwise devise a policy of adequate police training and or supervision for its law enforcement officers, the Plaintiff's suffered severe injuries. If properly trained, supervised and disciplined, every officer within the employ of the City of Laurel and Laurel Police Department would have known it was illegal to use their power and authority in the manner they did on the date in question and the damages suffered by the Plaintiffs would have been avoided.

48. Defendant Laurel Police Department's failure to provide adequate warning, reprimanding, training and supervision of its law enforcement officers was so grossly negligent that it amounted to deliberate and blatant disregard for the rights, privileges and immunities of the Plaintiffs and any other person or persons similarly situated.  Thus, because of the failure to adequately train and supervise the Defendants, the City of Laurel and the Laurel Police Department are liable to the Plaintiffs for the damages requested herein.

49. The Defendants have not remedied through training and supervisory personnel the actions that occurred in the past as they continue including these instant acts.

## COUNT II

### NEGLIGENT HIRING, RETENTION AND FAILURE TO DISCIPLINE OR TAKE NECESSARY CORRECTIVE ACTION

50. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing paragraphs.

51. Defendants City of Laurel and Laurel Police Department was vested with the authority to hire, fire, transfer and discipline its law enforcement employees.

52. On information and belief, prior to the May 31, 2019 event, an individual alleged illegal acts of the Laurel Police Department officers for an incident of brutality. After an investigation of the arrest, the officers were fired. Laurel Police Department officers believed they were above the law and could get away with blatant disregard for human life through the use of excessive force to subdue citizens. Because of that belief, Defendants utilized excessive force against the Plaintiffs, severely injuring them. As a direct and proximate consequence of the negligent hiring, retention and failure to discipline or to take necessary corrective immediate action regarding Laurel Police Department officers, the City of Laurel and Laurel Police Department is liable to the Plaintiffs for the damages requested herein.

## COUNT III

## BATTERY

53. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing paragraphs.

54. On or about May 31, 2019, the above named Defendants, with the exception of Police Chief Tommy Cox, inflicted offensive contact to the Plaintiffs. The offensive contact was intended to harm the Plaintiffs and/or unnecessarily inflict suffering and distress upon their bodies.

55. As a direct and proximate consequence of the battery that the Defendants inflicted upon the Plaintiffs, they suffered severe injuries. At all times material to this Complaint, the Defendants acted with wanton and willful reckless disregard for the safety and well-being of the Plaintiffs.

Thus, the Plaintiffs are entitled to a monetary judgment against the Defendants, both known and unknown, jointly and severally, who engaged in or contributed to or otherwise facilitated through their acts of omission or commission the battery and injuries of the Plaintiffs.

## COUNT IV

## ASSAULT

56. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing paragraphs.

57. The events that give rise to this action created in the Plaintiffs a reasonable apprehension that the Defendants, acting independently and in concert with one another, were going to cause them to suffer or sustain immediate harmful or offensive contact to their persons.  At all times material to this assault cause of action, Mr. Thomas was alive, conscious and fearful of his life. The Defendants acted with reckless disregard for the safety and well-being of Mr. Thomas by electrocuting and shooting him without justification.

58. As a direct and proximate consequence of the conduct of the Defendants, the Defendants are jointly and severally liable to the Plaintiff for the assault perpetrated upon the Plaintiffs.  At all times material to this Complaint, the Defendants acted with wanton, willful, and/or reckless disregard for the safety and well-being of the Plaintiffs.  Thus, the Plaintiff is entitled to a money judgment against the Defendants who engaged in or contributed to or otherwise facilitated through their acts of omission or commission the illegal assault that was inflicted upon the Plaintiffs.

## COUNT V

## CIVIL CONSPIRACY

59. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing paragraphs.

60. On the date in question, the Defendants, acting in concert with one another, entered into an agreement, expressly or by implications, through their participation in or condoning of the assault, battery and other actions complained of by the Plaintiffs, to engage in conduct that was wrongful, intentional, willful and wanton and designed to inflict upon the Plaintiffs certain harm, suffering and pain. The Defendants' agreement to engage in or allow persons under their supervision and control to engage in such conduct was illegal and amounted to a civil conspiracy against the Plaintiffs.

61. As a direct and proximate consequence of the conduct of the aforementioned Defendants, both known and unknown, the Defendants are jointly and severally liable to the Plaintiffs for the civil conspiracy to engage in conduct they knew or reasonably knew should have known was against the law and public policy of this State when the same manifested itself against the interests of the Plaintiffs. At all times material to this Complaint, the Defendants acted with wanton, willful, and/or reckless disregard for the safety and well-being of the Plaintiffs. Thus, the Plaintiffs are entitled to a money judgment against the Defendants who engaged in or contributed to or otherwise facilitated through their acts of omission or commission this civil conspiracy against the Plaintiffs.

COUNT VI

NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTION DISTRESS

62. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing paragraphs.

63. The Defendants' conduct was designed not only to inflict physical pain, suffering, and severe injuries and damages upon the Plaintiffs, but also to inflict emotional and mental anguish and distress upon the Plaintiffs. The manner, method and design of the Defendants' conduct caused the Plaintiffs to endure emotional and mental distress and anguish during the event in question and

on to this present day and into the future. To the extent the Defendants' actions were negligent and not intentional, they had the reasonably foreseeable effect of inflicting said emotional and mental distress and anguish upon the Plaintiffs.

64. As a direct and proximate consequence of the outrageous conduct of the Defendants, the Defendants are jointly and severally liable to the Plaintiffs for the negligent and intentional infliction of emotional distress and mental anguish inflicted on the Plaintiffs. At all times material to this Complaint, the Defendants acted with wanton and willful reckless disregard for the safety and well-being of the Plaintiffs, and the Plaintiffs are entitled to a money judgment against the Defendants for the same.

## COUNT VII

### FALSE ARREST / FALSE IMPRISONMENT

65. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing paragraphs.

66. The Defendants were at all times acting under the color of law.

67. The Fourth Amendment to the United States Constitution protects individuals from false arrest. Section 1983 is the vehicle in which the Plaintiff may bring a claim for violations of his Fourth Amendment rights.

68. In this case, there was absolutely no probable cause to arrest the Plaintiffs. These actions were outrageous and entirely unreasonable under the circumstances. As a result of this violation of their constitutional rights, the Plaintiffs have suffered extreme emotional damages.

69. The individual police officers are individually liable for their outrageous and unreasonable actions in arresting the Plaintiffs.

70. The governmental entity, City of Laurel, is also liable since Bell's arrest was

carried out pursuant to a policy or custom of the Laurel Police Department and said policy or custom was the moving force behind the constitutional violation. Laurel Police Department is also liable for the actions of its requisite policymaker, Chief, Tommy Cox, who implemented the policy at issue and played a role in the arrest of the Plaintiffs.

## COUNT VIII

### ACTION FOR DEPREVATION OF CIVIL RIGHTS
### (42 U.S.C. SECTION 1983)

71. The Plaintiffs hereby incorporate by reference and re-allege the information set forth in the foregoing paragraphs.

72. At all times material hereto, the Defendants were vested with authority and the non-delegable responsibility and the duty of adhering to, complying with, and enforcing the laws of the United States of America and the State of Mississippi. Consequently, while acting under the color of state law, the Defendants implemented a policy, usage, plan or widespread practice or custom wherein the rights, privileges or immunities of the Plaintiffs were violated. Specifically, the Defendants, jointly and severally, were engaged in a course of conduct that resulted in the violation of the Plaintiffs' rights under the Constitution of the United States of America and the corresponding provisions of the Constitution of the State of Mississippi, including, but not limited to, the right to be free from unreasonable search and seizure pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States of America, the right to procedural and substantive due process of the law pursuant to the Fifth and Fourteenth Amendments to the Constitution of the United States of America, and the right against cruel and unusual punishment as set forth in the Eight Amendment of the Constitution of the United States of America. The violations complained of in this Complaint include, but are not limited to, the use of excessive force, deprivation of identifiable civil rights, and the unnecessary and wanton infliction of pain

and inhuman torture in light of the circumstances confronted by the Plaintiffs, all of which resulted in sufficiently serious deprivations wherein the Defendants acted maliciously and with wanton, willful, and/or reckless disregard for the Plaintiffs' safety and well-being by using actions designed and intended to cause the Plaintiffs physical, mental and emotional harm and/or pain all of which caused or contributed to their injuries.

73. As a direct and proximate consequence of the Defendants' actions, the Plaintiffs were deprived of certain rights, privileges and immunities secured by the Constitution of the United States of America, the laws of this Nation, and the constitution and laws of the State of Mississippi. Specifically, the Plaintiff's Fifth and Fourteenth Amendment rights to procedural and substantive due process and to the equal protection of the laws were violated by the Defendants together with his Eighth Amendment rights proscribing cruel and unusual punishment resulting in severe injuries and damages.

74. At all times material hereto, the Defendants acted pursuant to the policies, regulations, and decisions officially and unofficially adopted or promulgated by those persons whose acts may fairly be said to represent the official policy of or were pursuant to a governmental custom, usage or widespread practice or custom of the City of Laurel.

75. It is further averred that unknown supervisory officials of the City of Laurel and Laurel Police Department were the governmental officials whose edicts or acts may be fairly said to represent official policy, practices, customs or regulations of the City of Laurel and Laurel Police Department. These officials developed, planned and implemented the policy, custom and/or usage that results in and led to the foreseeable use of police actions by the John Doe Defendants which caused the damages to the Plaintiffs.

76. The Fourth Amendment to the United States Constitution protects individuals from false

arrest. In this instance there was no probable cause to detain, arrest, or subject the Plaintiffs to a tasing/stun gun or shooting incident as described herein. The actions of the Defendants were outrageous, improper, illegal and unreasonable.

77. Any detention of the Plaintiffs was at all times unlawful, and holding them down and placing them in restraints occurred without their consent.

78. As a direct and proximate consequence of the Defendants' conduct wherein such Defendants deprived the Plaintiffs of certain rights guaranteed by the Constitution of the United States of America, the Plaintiffs suffered immediate and irreparable suffering to their person resulting in the deprivation of their constitutional rights, privileges and immunities and ultimately causing their injuries. While being battered by the John Doe Defendants, the Plaintiffs experienced extreme pain, suffering, humiliation, fear for their life, mental distress and severe emotional anguish.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon the filing of this Complaint that this Honorable Court will set this matter for a full and complete trial by jury on the merits and upon completion of the same, enter a judgment requiring the modification of Laurel Police Department training and practices, and granting damages for the following for each Plaintiff as to the following:

    a. Permanent emotional injury;

    b. Pain and suffering;

    c. Economic damages;

    d. Loss of enjoyment of life;

    e. Past, present and future emotional distress and mental anguish;

    f.   Court costs;

    g.   Pre- and post-judgment interest;

    h.   Attorney's fees pursuant to the ADA and 42 U.S.C. § 1988;

    i.   Any and all out of pocket expenses;

    j.   All other damages of every kind to the Plaintiffs to which they are entitled by law; and

    k.   All damages shown by the evidence introduced in this case, including compensatory damages and punitive damages to deter Defendants from exhibiting, conducting and continuing to use such actions as described herein upon persons within the City of Laurel, particularly as to taser usage on citizens.

Respectfully submitted, this the 8th day of August, 2019.

By:   MEKAIL THOMAS AND EREAON SMITH

/s/J.StewartParrish
J. Stewart Parrish, MSB #10833

/s/Bobby Moak
Bobby Moak, MSB #9915

Counsel for the Plaintiffs:

J. Stewart Parrish, MSB #10833
Law Office of J. Stewart Parrish, P.A.
P.O. Box 823
Meridian, MS 39302
601-696-4400
601-696-4455(fascimile)

Mr. Bobby Moak, MSB #9915
Law Offices of Bobby Moak, P.C.
P.O. Box 2422
402 Monticello Street

Bogue Chitto, Mississippi 39629
Tel. (601) 734-2566
E-mail bobbymoak402@att.net