UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| **MEKAIL THOMAS and** | **PLAINTIFFS** |
| **EREAON SMITH** | |
| | |
| **vs.** | **CIVIL ACTION NO. 2:19-CV-112-KS-MTP** |
| | |
| **THE CITY OF LAUREL MISSISSIPPI; THE** | |
| **LAUREL POLICE DEPARTMENT; TOMMY COX;** | |
| **MITCH SUMRALL; KEITH BLANCETT; JOSH** | |
| **FREEMAN; SKYLAR PRUNERA; BRIAN HANCOCK;** | |
| **and JOHN DOES, 1-10** | **DEFENDANTS** |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

**COME NOW** Defendants The City of Laurel, Tommy Cox, Mitch Sumrall, Keith Blancett, Josh Freeman, Skylar Prunera and Brian Hancock (hereinafter "Defendants"), by and through their counsel of record, and having filed their *Motion for Summary Judgment,* hereby submit their memorandum in support thereof as follows:

**I. INTRODUCTION**

On or about May 31, 2019, certain officers of the City of Laurel Police Department were conducting a safety checkpoint on 16th Avenue in Laurel. (See **Exhibit "B"** attached to *Motion for Summary Judgment*)  During this time, Plaintiffs approached the checkpoint in a car driven by Mekail Thomas and Ereaon Smith was in the front passenger seat.  Plaintiffs were directed by an officer to pull to the side of the road.  At that time, officers approached the vehicle and asked for identification.  Plaintiffs gave permission for the officers to search the vehicle.  Upon looking in

the vehicle, officers discovered the presence of illegal substances. Officer then approached Mr. Thomas and told him to put his arms behind his back. Mr. Thomas refused and immediately began to violently struggle with the officers. Mr. Thomas was taken to the ground where he continued to violently resist the officers attempts to handcuff him. As a result of Mr. Thomas violent resistance, a taser was deployed in an attempt to obtain compliance with the officers and to stop Mr. Thomas' violent behavior and actions. Mr. Thomas continued to violently resist, regained his footing and the officers were unable to restrain him. Mr. Thomas took several steps away from the officers and then turned toward the officers with his hands in his pants. As a result of this violent resistance and threatening behavior of turning toward the officers with his hands in his pants, Mr. Thomas sustained a bullet wound. At this point, Mr. Thomas was subdued by officers who rendered medical aid to Mr. Thomas. Mr. Thomas was transported by ambulance to the local hospital for treatment. (See **Exhibit "B"**). Mr. Thomas was charged with resisting or obstructing arrest and possession of marijuana in vehicle. (See **Exhibit "D"** attached to *Motion for Summary Judgment*) During this time of the actions of Mr. Thomas, Co-Plaintiff, Eraeon Smith, was removed from the passenger side of the vehicle. Mr. Smith was handcuffed and placed into another police vehicle. Mr. Smith was then taken to the police station where he provided a video taped statement of the events he witnessed. (See **Exhibit "C"**, Smith Video Statement attached to *Motion for Summary Judgment*)

Co-Plaintiff, Eraeon Smith, stated that he and Mr. Thomas had drugs on them in the vehicle when stopped by police that night. (**Exhibit "C"**, Minute 8:03 & 9:55) Mr. Smith stated that Mr. Thomas actively resisted the officers. (**Exhibit "C"**, Minute 11:05) Mr. Smith stated he saw Mr. Thomas reach into his pants when he turned toward the officers. (**Exhibit "C"**, Minute 11:15 & 11:27) Mr. Smith stated that he understood why the police did what they did because Mr. Thomas

was reaching into is pants and no one knew what he was grabbing. (**Exhibit "C"**, Minute 11:45) Mr. Smith stated he understands why Mr. Thomas was shot. (**Exhibit "C"**, Minute 14:18)

## II. ARGUMENT

1. <u>**THERE EXISTS NO GENUINE ISSUE OF ANY MATERIAL FACTS**</u>

It is well established that a motion for summary judgment is proper when there exists no genuine issue of material fact between the parties to an action and the case can be decided as a matter of law. *Cunningham v. Lanier*, 589 So.2d 133 (Miss. 1991). This is not to say that just any disputed issue of fact is sufficient to defeat a motion for summary judgment or to require a trial on the merits; only **material issues of fact** are sufficient to overcome a properly filed motion. *Vickers v. First Mississippi Nat. Bank*, 458 So.2d 1055, 1061 (Miss. 1984). Summary judgment is appropriate here because there is no genuine issue as to any material fact regarding the allegations in Plaintiffs' Complaint. (See **Exhibit "A"** attached to *Motion for Summary Judgment*).

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56c), Fed. R. Civ. P., "a party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor..." Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S., 317, 322, 91 L.Ed. 2d 265, 106 S. Ct. 2548 (1986). Where "the summary judgment evidence establishes that one of the essential elements of the [plaintiff's] cause of action does not exist as a matter of law, ...all other contested issues of fact are rendered immaterial. See *Celotex,* 477 U.S. at 323, 106 S. Ct. at 2552." *Topalian v. Ehrman,* 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion

for summary judgment, the Court just view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin,* 736 F.2d 175, 178 (5th Cir. 1984).

To prevail on his motion, the moving party must demonstrate the lack of a genuine issue of material fact and the propriety of judgment as a matter of law. *Union Planters Nat'l Leasing v. Woods,* 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the Court of the basis of the motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian,* 954 F.2d at 1131. Once a properly supported motion for summary judgment is presented, the non-moving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.,* 584 F.2D 111, 114 (5th Cir. 1978). Each of Plaintiffs' claims fail as a matter of law and are discussed below.

## DISCUSSION

### A. Plaintiffs' § 1983 and Excessive Force Claim Fail as a Matter of Law:

To establish a claim for violation of civil rights based on the use of excessive force, Plaintiff must prove "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Williams v. Bramer,* 180 F.3d 699, 703 (5th Cir. 1999). Plaintiffs have failed to present significant probative evidence to support the elements of their claim that any of the officers' use of force was clearly excessive to the need, and objectively unreasonable[1].

It is undisputed that Mr. Thomas failed to allow the officer to handcuff him. There is no

---

[1] In the abundance of caution, Defendants state that Plaintiff, Eraeon Smith does not meet any of the requirements for an excessive force claim as there is no evidence of any injury, any force in any manner or use of any objectionably unreasonable force involving Mr. Smith. Mr. Smith was a bystander to the events. It is undisputed that any Section 1983 or Excessive Force claim as to Mr. Smith is unsupported and should be dismissed.

dispute that Mr. Thomas violently and aggressively attempted to avoid being handcuffed. There is no dispute that due to his continued violent resistance, Mr. Thomas was taken to the ground. After being on the ground, Mr. Thomas failed to comply with the lawful orders of the officers and violently resisted all attempts to be subdued. It is undisputed that Mr. Thomas, even after the deployment of a taser, failed to comply and fought all attempts by the officers to handcuff Mr. Thomas. It is undisputed that during his violent resistance, Mr. Thomas was able to get off the ground, escape the grasp of the officers, and proceed a short distance away from the officers all the while failing to follow the commands of the officers. It is undisputed that Mr. Thomas turned toward the officers with his hands in his pants. (See **Exhibit "B" and Exhibit "C"**) Under the totality of the circumstances, there is no evidence and not any genuine issue of any material fact which supports any finding of excessive or objectively unreasonable force.

Furthermore, each of the officers are entitled to Qualified Immunity in this matter. Qualified immunity protects a law enforcement official *individually*, "insofar as [his] conduct does not violate clearly establishes statutory or constitutional rights of which a reasonable person could have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818-19, 102 S. Ct. 2727, 2738, 73 L. Ed.2d. Qualified immunity "protects all public officers from individual liability except those 'who are plainly incompetent or who knowingly violate the law.'" *Malley v. Briggs,* 475 U.S. 335, 340, 106 S. Ct. 1092, 1096, 89 L. Ed.2d 271 (1986); *Hodorowski v. Ray,* 844 F.2d 1210, 1216 (5th Cir. 1988). If a law enforcement official reasonably could have believed under the circumstances that his conduct was not a violation of the plaintiffs' constitutional rights, then he cannot be held liable. *Simpson v. Hines,* 903 F.2d 400, 402 (5th Cir. 1990), *citing Anderson v. Creighton,* 483 U.S. 635, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987)." *Dean v. Thomas,* 933 F. Supp. 600, 607 (S.D. Miss. 1996).

As recently recognized by the Fifth Circuit in the context of an appeal on an issue of qualified immunity, the issue of whether or not a law enforcement officer's conduct is objectively reasonable under the Fourth Amendment, for purposes of qualified immunity, is a *question of law. See Colston v. Barnhart,* 146 F.3d 282, 285-86 (5th Cir. 1998); *Colston v. Barnhart,* 130 G.3d 96, 99 (5th Cir. 1997)("We ... determine the legal issue of whether Barnhart's conduct was objectively reasonable."). Addressing an appeal on the qualified immunity issue, the Fifth Circuit held,

> for this appeal on qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident, as discussed supra. And, under that standard–the minimum standard not to be deliberately indifferent – the actions of the individual defendants are examined to determine whether, as a matter of law, they were **objectively unreasonable**.

*Hare v. City of Corinth,* 135 F.3d 320, 328 (5th Cir. 1998). The standard of deliberate indifference is applicable to this action. Therefore, this Court must determine whether, under that standard, "the actions of the individual defendants . . . were objectively unreasonable."

Restated, of relevance to the legal inquiry in the matter *sub judice*, is the Fifth Circuit's pronouncement that an officer "is entitled to qualified immunity against the plaintiff's claims if a reasonable police officer *could conclude* that conduct such as [the Defendant's] would not violate the rights of a person such as [the Plaintiff] to be free from excessive force..." *Fraire v. City of Arlington,* 957 F.2d 1268, 1274 (5th Cir. 1992). As stated in *Fraire*, "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Id.* At 1273. *Accord, Reese v. Anderson,* 926 F.2d 494, 501 (5th Cir. 1991).

This same line of reasoning was adopted by the Sixth Circuit Court of Appeals in *Smith v. Freland,* 954 F.2d 343, 347 (6th Cir. 1992) (which cited with approval *Reese v. Anderson, supra),* in its statement that "... we must avoid substituting our personal notions of proper police procedure

for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *See Stroik v. Ponseti,* 35 F.3d 155, 158-59 (5th Cir. 1994).

A two–step approach is used to evaluate qualified immunity claims. The first step is to "consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right." *Price v. Roark,* 256 F.3d 364, 369 (5th Cir. 2001) (citing *Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)). If the plaintiff's allegations could make out a constitutional violation, the court then asks "whether the right was clearly established-that is, whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Price,* 256 F.3d at 369 (quoting *Saucier*, 121 S. Ct. At 2156). "If, upon viewing the evidence in the light most favorable to the [plaintiff], reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Southard v. Tex. Bd. of Criminal Justice,* 114 F.3d 539, 550 (5th Cir. 1997). "This inquiry is an objective one, not dependent on the particular officer's subjective beliefs." *Haggerty v. Texas Southern Univ.,* 391 F.3d 653, 655 (5th Cir. 2004) (citing *Anderson v. Creighton,* 483 U.S. 635, 107 S. Ct. 3034, 3040, 97 L. Ed.2d 523 (1987)).

More recently, the Supreme Court revised its approach in Saucier and stated that courts are free to exercise their discretion in deciding "which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 129 S.Ct. 808, 818 (2009); see also *Knoblauch,* 566 F.3d at 579 (stating that if an officer's conduct did not violate

clearly established law, qualified immunity will shield the officer from liability). Thus, if the individual defendants' actions did not violate a clearly established law, qualified immunity will shield them from liability.

A party seeking damages from an official asserting qualified immunity bears the burden of overcoming that defense. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "To do so, the plaintiff must show that the official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." *Jolly v. Klein,* 923 F. Supp. 931, 946 (S.D. Tex. 1996)(*citing Harlow v. Fitzgerald,* 457 U.S. 800, 816, 102 S. Ct. 2727, 2737, 73 L.Ed.2d 396 (1982)). Qualified immunity creates a presumption in favor of immunity for pubic officials. *Schalk v. Gallemore,* 906 F.2d 491 (10th Cir. 1990). Plaintiff bears the burden of overcoming the qualified immunity defense, and must do so by establishing specific facts which demonstrate that pursuant to the law as it existed at that time, the Defendants' actions were clearly prohibited. *Anderson v. Pasadena Independent School District.,* 184 F.3d 439, 443 (5th Cir. 1999). Conclusory allegations are not sufficient to overcome summary judgment.

> The Fifth Circuit has prescribed the following formula for applying qualified immunity: Assessing the defense of qualified immunity is a two-step process. First, using 'currently applicable constitution standards,' we determine whether the plaintiff has 'allege[d] the violation of a clearly established constitutional right.' If so, we then decide if the defendant's conduct was objectively reasonable, because '[e]ven if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable.'

*Nerren v. Livingston Police Dept.,* 86 F.3d 469, 473 (5th Cir. 1996)(citations omitted).

As clearly demonstrated herein, none of the officers' conduct violated a clearly established constitutional right of the Plaintiffs. At no time did any of the actions of any of the officers rise to

the level of a violation of Plaintiffs' constitutional rights. Secondly, the officers conduct at all times was objectionably reasonable by any standard of interpretation. In determining whether an officer's conduct is objectionably reasonable, the analysis is not to second guess the officer from a sterile location with no consideration of the actual facts and circumstances surrounding the contact between the officer and the citizen. The analysis is not to substitute personal notions of proper police procedure for the instantaneous decision of an officer dealing with a potentially dangerous situation in real time. *Freland*, 954 F. 2d 347.

In determining the reasonableness of an officer's conduct, the Court is not to employ "the 2020 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 395-6, 109 S. Ct. 1865, 1871-2, 104 L.Ed. 2d 443 (1989). The Court must consider "the fact that the police are often forced to make split second judgments - - in circumstances that are tense, uncertain, and rapidly evolving - - about the amount of force that is necessary in a particular situation." Id at 396-97. *See also Dismukes v. Hackathorn*, 802 F. Supp. 1442, 1450 (N.D. Miss 1992) The Fifth Circuit Court of Appeals has opined that the Court is to pay particular attention to "whether the suspect posed an immediate threat to the safety of the officer or others, and whether he {was} actively resisting arrest." *See Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994). Federal Courts have stated that "We will not second guess the split second judgment of a trained police officer merely because that judgment turns out to be mistaken, particularly where inaction could have resulted in death or serious injury to the officer. . . . *McLenagan v. Karnes*, 27 F.3d 1002, 1007-08 (4th Cir. 1994). The "Supreme Court intends to surround the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases. *Roy v. Inhabitants of City of Lewiston*, 42 F.3d 691, 695 (1st Cir.1994) "We must avoid substituting our personal notions of proper police procedure for the

instanteous decision of an officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day." *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) What constitutes reasonable action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure. *Stroik v. Ponseti*, 35 F. 3d 155, 158 (5th Cir. 1994)

In *Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991), a police officer engaged in a car chase with two robbery suspects. Once the suspects vehicle came to a stop, the police officer ordered the suspects to raise their hands. After complying, the suspect in the front passenger seat lowered his hands and reached down below his seat with his left hand. The officer again commanded the suspects to raise their hands and again the passenger in the front sear raised and then lowered his hands. After this happened a few times, the police officer, fearing for his safety, shot the suspect in the front passenger seat killing him. It was later determined the suspect was unarmed. *Id* at 500. In finding that the officer was entitled to summary judgment, the 5th Circuit held that under the circumstances a reasonable officer could fear for his safety and safety of others. He could reasonably believe that the suspect had a weapon and was going to shoot. *Id.* at 501.

In the instant case, the officers approached the Plaintiffs' vehicle. An officer then attempted to handcuff Mr. Thomas. Mr. Thomas resisted the officers' attempts to handcuff him. After engaging in active resistance and fighting the officers attempts to restrain him, Mr. Thomas got off the ground, ran forward away from the officers despite being told numerous times to stop and turned toward the officers with his hands in his pants. (See **Exhibit "B" and "C"**) Mr. Thomas actions were so violent and dangerous that even co-plaintiff, Ereaon Smith, stated that he understood why the officers acted in the manner they did and that Mr. Thomas had resisted the officers and turned toward them while

reaching into his pants. (**Exhibit "C"**) No reasonable person reviewing the situation could find that any of the officers' use of force as excessive in any way or that his actions were not objectionably reasonable. As such, each of the officers are entitled to Qualified Immunity and is entitled to summary judgment as a matter of law as to all claims against them.

### B. Plaintiffs' Claims of False Arrest/False Imprisonment Fail as a Matter of Law.

To sustain a claim of unlawful detention/false arrest, Plaintiffs must show that the Defendants caused them to be detained/arrested falsely, unlawfully, maliciously and without probable cause. If a Plaintiff arrest is supported by probable cause, the Plaintiff's claim for false arrest must fail. *Hudson v. Palmer,* 977 So. 2d 389. Miss. App. Ct. 2007, an arrest is unlawful unless it is supported by probable cause. *Hamshar v. Doffer,* 785 F.2d 1260, 1266 (5th Cir. 1988). "Probable cause exists when they totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine,* 80 F. 3d 128, 132 (5th Cir. 1986). In addition, Plaintiffs bear the burden of proof to establish that the arrest and imprisonment were in fact and law unlawful.

In this case, Plaintiff, Mekail Thomas violently and aggressively resisted arrest. In addition, Co-Plaintiff, Ereaon Smith admitted in his video statement that there were illegal drugs in the vehicle and in their possession. Smith also agreed that Mr. Thomas had resisted arrest to the point where even Smith stated he would have acted just as the officers herein did. (**Exhibit "C"**) Furthermore, under the prevailing view in this country, a peace officer who detains/arrests someone with probable cause is not liable to false arrest simply because the innocence of the suspect is later proved. *Restatement Second of Torts* 121 (1955). We hold that the defense of good faith and probable cause,

which the Court of Appeals found available to the officers in the common law action for false arrest and imprisonment is also available to them in the action under §1983. If the officer believed in good faith that the arrest was constitutional then a verdict finding against a claim of false arrest is valid. *Pierson v. Ray,* 386 U.S. 547, 556 (1967). Therefore, one need only to examine the circumstances and facts in the instant case to determine the good faith and reasonableness of the Defendants' actions to invalidate Plaintiffs' claims of unlawful arrest/false imprisonment.

### **C. Plaintiffs' policy and custom, inadequate supervision, failure to train and negligent hiring, retention and discipline or take necessary corrective action against the City of Laurel fail as a matter of law and should be dismissed.**

Municipalities are not vicariously liable for the actions of their employees under §1983; liability inures only when the *execution of* a local government's policy or custom causes the injury. *See Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir. 1996). In order to hold a municipality liable under §1983 for its employees' acts, a plaintiff must show that a policy of training caused those acts. Such a showing requires proof that: (1) the training procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the plaintiff's injury. Where the alleged policy is one of inadequate police training, the plaintiff can only satisfy the first element of municipal liability if the failure to train satisfies the "deliberate indifference" standard that applies to supervisor liability. *See Baker,* 75 F.3d at 200*; see also Benavides v. County of Wilson*, 955 F. 2d 968, 972 (5th Cir. 1992).

The United States Supreme Court, in *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 813 (1985), held that in order to hold a municipality liable for a policy of inadequate training, evidence of a singular incidence of unconstitutional activity in and of itself is insufficient to impose liability;

instead considerably more proof is required to establish both "fault" on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation. As recently recognized by the Fifth Circuit:

> [I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397 (1997).

In *Bryan County*, the Supreme Court expanded upon *City of Canton v. Harris,* 489 U.S. 378 (1989), explaining: "As our decision in *Canton* makes clear, 'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Brown,* at 1391. Additionally, the United States Supreme Court has held that the inadequacy of training *must be blatantly obvious* before policymakers can be held liable for violation of constitutional rights. *City of Canton v. Harris,* 489 U.S. 378, 390 (1989) (*emphasis added*); See *Cawthorn,* 745 F. Supp. at 382-83.

Plaintiffs have offered no proof of unconstitutional activity on the part of the City of Laurel. Plaintiffs have failed to provide any evidence of the City of Laurel being the "moving force" behind the depravation of the constitutional rights of citizens. There is simply no evidence which exists that demonstrates fault on the part of the City of Laurel and any causal connection between any alleged "policy" and constitutional deprivation. Furthermore, Plaintiffs cannot prove in any respect that the unsupported allegations of a custom or policy in this case are linked in any manner to the policy making level of the City of Laurel. Plaintiffs cannot demonstrate that the policy makers in the City

of Laurel had knowledge of the alleged custom or policy. As a result, Plaintiffs' claims against the City of Laurel, again, fail on yet another basis as a matter of law.

Plaintiffs' claims for negligent hiring, retention, inadequate training or supervision also fail as a matter of law. Mere conclusory allegations are insufficient; for liability to attach based on an "inadequate training" claim, the plaintiff must prove with specificity how a particular training program is defective. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169-70 (5th Cir. 2010); *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992); *Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005); *see also Goodman v. Harris County*, 571 F.3d 388 (5th Cir. 2009) (stating "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective.").

The same can be said for Plaintiffs' claim as to inadequate supervision. Plaintiffs cannot present any evidence of any specific deficiencies in the City of Laurel's supervision, or any specific facts demonstrating a pattern of similar violations.

To succeed on a Section 1983 claim arising from a city's failure to train or supervise its employees, a plaintiff must demonstrate that: "(1) the city's training policy procedures were inadequate, (2) the city was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the constitutional violation." *See Kitchen v. Dallas Cty., Tex.*, 759 F.3d 468, 484 (5th Cir. 2014).

Plaintiffs have no evidence of a facially unconstitutional policy or that any city policy was the actual cause and moving force behind the alleged unconstitutional actions. In fact, Plaintiffs have no evidence that the policymakers were even negligent. "Deliberate indifference is more than mere negligence." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). As recognized by

the Fifth Circuit, it requires a pattern of similar violations showing "the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights." *Sanders-Burns*, 594 F.3d at 381. Plaintiffs' claims as to negligent hiring, retention, and failure to discipline or take necessary corrective action, failure to train and inadequate supervision clearly fail as a matter of law and should be dismissed.

**D. Plaintiffs' claims against Police Chief Tommy Cox fail as a matter of law.**

All of Plaintiffs' claims against Police Chief Tommy Cox arise from his status as Police Chief. To state a claim under Section 1983, the plaintiff must allege facts reflecting the defendant's participation in the alleged wrong, specifying the personal involvement of each defendant. *Jolly v. Klein*, 923 F.Supp 931, 943 (S.D. Tex. 1996). As widely recognized, under Section 1983 supervisiory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability. *Monell v. Department of Social Services*, 436 U.S. 658, 691-5, 98 S.Ct. 2018, 2036-38, 56 L.Ed 2d 611 (1978). Plaintiff must show that the supervisory law enforcement official breached a duty imposed by state or local law and that the breach caused the plaintiff's constitutional injury. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) Further, the Plaintiff must prove that the supervisor failed to train or supervise, a causal link exists between the failure to train or supervise and the failure to train or supervise amounts to deliberate indifference on the part of the supervisor. *Id*. At 911 Plaintiffs have no such evidence. Plaintiffs can not rely on conclusory allegations or a single isolated event but must show that the official knew of a "history of widespread abuse." *Hinsaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986). In the instant case, Plaintiffs have nothing but the conclusory allegations in their Complaint. As a result, all claims against Police Chief Tommy Cox fail as a matter of law and he is entitled to summary judgment on all claims.

### E. Plaintiffs' claims of civil conspiracy fail as a matter of law.

The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. *Denny v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) A corporation cannot conspire with itself. *Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997). The police officers were employees of the City. There are no multiplicity of actors which is fundamentally necessary for the formation of a conspiracy. Therefore, Plaintiffs' conspiracy claims should be dismissed.

In addition, a conspiracy claim must be pled with factual specificity. *Robinson v. McCorkle*, 462 F. 2d 111, 113014 (3rd. Cir), cert denied, 409 U.S. 1042 (1972). Mere conclusory allegations that a conspiracy existed will not survive. *Rogin v. Bensalem Township*, 616 F.2d 680, 696 (3rd Cir. 1980); *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 829-30, 103 S.Ct. 3352, 3356-57 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798 (1971). Vague references to some conspiracy and hints at some tenuous link between this conspiracy and fact that a Plaintiff was of a certain race are insufficient to state a claim for conspiracy to deprive a plaintiff of his civil rights. *Gyadu v. Hartford Insurance Company*, 197 F.3d 590, 591 (2nd Cir. 1999). Plaintiffs have no facts to support a claim of conspiracy. Mere conclusory allegations of a of a material fact are insufficient to generate a triable issue of fact and avoid summary judgment. *Whiting v. Univ. of S. Miss.*, 62 So. 3d 907. 914 (Miss 2011). In order to establish a conspiracy, the plaintiffs must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy and (4) damages as a proximate result. *Bradley v. Kelly Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct.

App. 2013) Plaintiffs can not even provide evidence of the first element of the claim as there is no evidence of any agreement between two or more persons herein. In addition, there is no evidence there was any agreement to accomplish a unlawful purpose. Plaintiffs can not present any triable issue of material fact as to their conspiracy claim and Defendants are entitled to summary judgment.

**F. Plaintiffs' state law claims should be dismissed[2].**

On August 9, 2019, Plaintiffs filed their Complaint alleging, among other claims, certain state law claims and violations which are subject to the immunities contained in and within the mandated requirements of the Mississippi Tort Claims Act, Miss Code Ann. Section 11-46-1 et al. (Docket Number 1, Para. 25 -38, and Counts I -VI) Plaintiffs did not provide a written notice of claim prior to instituting the instant action against these defendants.

Pursuant to Miss. Code Ann. Section 11-46-11(1), Plaintiffs are required to provide a written notice of claim at least ninety (90) days prior to instituting suit. Plaintiffs undeniably failed to follow the mandates of the statute. Pursuant to *UMMC v. Easterling*, 928 So. 2d 815 (Miss. 2006), strict compliance with the 90 day notice requirement is required. Responsibility to comply with the 90 day notice requirement of Tort Claims Act lies with the plaintiff. After the plaintiff gives notice, he must wait the requisite 90 days. *Id*. at 820. The notice requirement is a hard-edged mandatory rule which must be enforced. *Id*. Plaintiffs failed to follow the hard-edged mandatory rule regarding notice. Plaintiffs state law claims and claims under the Mississippi Tort Claims Act should be dismissed. Not only did Plaintiffs not provide ninety days prior notice of their claims, Plaintiffs actually filed their cause of action and have never provided the required notice to Defendants. As a result,

---

[2]It appeared that The Court's Memorandum Opinion and Order (Doc 11) dismissed the state law claims. However, in the exercise of caution, Defendants are requesting Summary Judgement on all claims against them herein.

Defendants herein are entitled to a dismissal of all of Plaintiffs' state law claims and claims under the Mississippi Tort Claims Act including claims contained in paragraphs 25-49 and Counts I-VI.

In addition, Officers Mitch Sumrall, Keith Blancett, Josh Freeman, Skylar Prunera and Brian Hancock can not be personally liable for actions or omissions within the course and scope of their official duties. Miss. Code. Ann. Section 11-46-7(2). Plaintiffs do not allege any actions which arose outside of the officers course and scope of employment. At all times herein, the officers were acting as employees of the City of Laurel as police officers. Plaintiffs' have no evidence that the Officers acted outside the scope of their employment. Furthermore, Plaintiffs' state law claims do not fall within any exclusion of immunity under the MTCA. There is no evidence of fraud, malice, slander, defamation or any criminal offense.

Furthermore, pursuant to Miss Code Ann. 11-46-9(1)©, the officers shall not be liable for any claim when the officers were acting within the performance of their duties unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity. Herein, not only were the officers acting within the performance of their duties but Plaintiffs cannot provide evidence of any individual officer's act of reckless disregard and Mr. Thomas was engaged in criminal activity. Mr. Thomas actively and violently resisted arrest, failed to follow the commands of the officers, and had illegal drugs in the vehicle. There is no dispute to these facts as even co-plaintiff Eraeon Smith sprecfrically admitted in his statement that they had drugs in the car when the officers approached and that Mr. Thomas resisted arrest even to the point that Mr. Smith stated that he understood why the officers acted in the manner they did to protect themselves. It is undeniable that the officers are entitled to immunity to all state claims by Plaintiffs herein and are entitled to summary judgment on all counts.

### G. Plaintiffs' claims for punitive damages fail as a matter of law.

As noted by this Honorable Court's Order, (DOC 11) the Plaintiffs' claims for punitive damages against the City are barred. Likewise, the Mississippi Tort Claims Act precludes the recovery of punitive damages against defendants, either individually or in their official capacities, or against a municipality itself. Miss. Code Ann. Section 11-46-15(2) which provides that "No judgment against an governmental entity or its employee for which any action or omission for which immunity is waived under this chapter shall include an award for exemplary or punitive damages or for interest . . . or an award of attorney's fees. . . " *Miss. Code Ann. Section 11-46-15(2)*. Therefore, all claims for punitive damages by Plaintiffs fail as a matter of law and should be dismissed.

### III. CONCLUSION

There is no genuine issue of material fact regarding Plaintiffs' claims which all fail as a matter of law. Therefore, Defendants requests that this Court enter an *Order Granting Summary Judgment* as to all claims and dismissing this matter with prejudice.

**CITY OF LAUREL et al, Defendants**


By: /s/ *Brett W. Robinson*
     **Brett W. Robinson**

**Brett W. Robinson, [MSB#10006]**
**Hortman Harlow Bassi Robinson**
  **& McDaniel, PLLC**
Post Office Drawer 1409
Laurel, MS 39441-1409
Tele: (601) 649-8611
Fax: (601) 649-6062
brobinson@hortmanharlow.com
    **[Attorney for Defendants, City of Laurel, et al]**

\* \* \* \* \* \* \* \*

**CERTIFICATE OF SERVICE**

      I, Brett W. Robinson, counsel for Defendants, City of Laurel et al, do hereby certify that I have this day filed via the Court's electronic filing system, a true and correct copy of the above and foregoing document to: all parties of record.

      This the 5th day of January, 2021.

                                  /s/ *Brett W. Robinson*
                                  **Brett W. Robinson**