**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**MEKAIL THOMAS,** *et al.*                                                              **PLAINTIFFS**

**V.**                                                    **CIVIL ACTION NO. 2:19-CV-112-KS-MTP**

**THE CITY OF LAUREL, MISSISSIPPI,** *et al.*                          **DEFENDANTS**

<u>MEMORANDUM OPINION AND ORDER</u>

For the reasons provided below, the Court **grants in part and denies in part**

Defendants' Motion for Summary Judgment [68]. Specifically, the Court rules as

follows:

- the Court grants the motion as to Defendant Smith's § 1983 excessive force claims;

- the Court grants the motion as to Plaintiffs' § 1983 claims for false arrest and false imprisonment;

- the Court grants the motion as to Plaintiffs' § 1983 claims against the City of Laurel and the individual Defendants in their official capacities;

- the Court grants the motion as to Plaintiffs' § 1983 claims arising from Defendants' alleged failure to train or supervise the City's employees;

- the Court grants the motion as to Plaintiffs' § 1983 claims against Defendant Tommy Cox;

- the Court grants the motion as to Plaintiffs' state-law civil conspiracy claims;

- the Court grants the motion as to Plaintiffs' state-law claims of negligent hiring/supervision/training, negligent infliction of emotional distress, and civil conspiracy;

- the Court grants the motion as to Plaintiffs' state-law claim for punitive damages;

- and the Court denies the motion in all other respects.

## I. BACKGROUND

This is a police shooting case. The Court described Plaintiffs' allegations in its Memorandum Opinion and Order [11] of December 5, 2019. Officers stopped Plaintiffs at a checkpoint, and during the encounter, an officer shot Plaintiff Thomas. Plaintiffs asserted a wide variety of claims under both state and federal law. The Court previously dismissed Plaintiffs' official-capacity claims against the individual Defendants; Plaintiffs' state-law claims against the City; any claims asserted against the Laurel Police Department, rather than the City; Plaintiffs' § 1983 claims for punitive damages against the City; and Plaintiffs' state-law civil conspiracy claim against the individual Defendants in their official capacity. Defendants filed a Motion for Summary Judgment [68], which the Court now addresses.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir.

2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## III. DISCUSSION

### A.    *§ 1983 – Excessive Force*

Defendants asserted two arguments with respect to Plaintiffs' excessive force claims. First, Defendants argue that Plaintiffs do not have evidence to prove each of the elements of an excessive force claim. Second, the individual Defendants argue that they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established

3

statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "Although nominally a defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

There are two steps in the Court's analysis. First, the Court determines whether the defendant's "conduct violates an actual constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Second, the Court must "consider whether [the defendant's] actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question." *Id.* The Court may address either step first. *Pearson*, 555 U.S. at 236. "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brumfield*, 551 F.3d at 326. The Court "applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).

"[T]he right to be free from excessive force during a seizure is clearly established." *Poole*, 691 F.3d at 627; *see also Newman v. Guidry*, 703 F.3d 757, 763 (5th Cir. 2012); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). To prove a claim of excessive force, Plaintiffs must present evidence of "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3)

4

the force used was objectively unreasonable." *Romero v. City of Grapevine, Tex.*, 888

F.3d 170, 176 (5th Cir. 2018).

> Though some injuries are so minor that they are insufficient to satisfy the injury element as a matter of law, an injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible – that is, objectively unreasonable under the circumstances. The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible. Specifically, the court should consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Bush*, 513 F.3d at 501.

In excessive force cases, officers are generally entitled to qualified immunity "even when [they] act negligently, or when they could have used another method to subdue a suspect, or when they created the dangerous situation, or when the law governing their behavior in particular circumstances is unclear." *Mason v. Paul*, 929 F.3d 762, 763 (5th Cir. 2019). Moreover, courts are not permitted to "hold officers liable from the safety of our 20/20 vision of hindsight for decisions taken in a split-second under potentially life-threatening conditions." *Id.* Rather, the Court "applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Freeman*, 483 F.3d at 411. "[W]hat matters is what the defendant . . . knew when [he] shot" the decedent. *Cole v. Carson*, 935 F.3d 444, 456 (5th Cir. 2019). The Court must pay "careful attention to the facts and

5

circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or others." *Orr v. Copeland*, 844 F.3d 484, 493 (5th Cir. 2016).

### 1.    *Plaintiff Smith*

First, Plaintiff Smith alleged that Defendants employed excessive force against him by shoving him to the ground face-first while he was restrained in handcuffs. In support of this allegation, Plaintiffs cited a forty-two-minute body cam video[1] without providing a specific time-stamp reference. The Court is not obligated to search through the video for evidence to support Plaintiffs' claims. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

Regardless, the Court carefully watched the entire video, and it does not show an officer shoving Smith to the ground. In fact, at approximately 2:59 into the video – after Thomas had been shot – it shows an officer scream at Smith, "Get on the ground! Now! Get! Don't move! Don't move! You hear me?" Exhibit C [79-3], Body Cam X81091613. Smith was standing, but after the officer yelled at him, he kneeled

---

[1] The record contains four body cam videos. *See* Exhibit C to Response [79-3] (conventionally filed). Here, Plaintiffs cited video from "Body Cam 3," footage stamped with the following cam number: X81091613.

and lay face-down on the ground, with his hands cuffed behind his back. *Id.* The officer then turned toward Thomas, who had been shot. *Id.* Later, at approximately 3:37, the same officer turned back toward Smith again and yelled, "Don't move!" as he approached him. *Id.* Smith was still on the ground, on his stomach, with his hands cuffed behind his back. *Id.* At 3:40, the officer approached Smith and said to him, "Get up with me," and helped Smith to his feet. *Id.* The officer then led Smith to a patrol car, and at approximately 4:10, the officer placed him in the back seat of the patrol car. *Id.*

Therefore, the Court concludes that Plaintiffs have not presented the Court with any evidence that officers used excessive force against Plaintiff Smith. The Court grants Defendants' motion as to Smith's excessive force claims.

2. *Plaintiff Thomas*

As noted above, Defendants argue that Plaintiffs do not have sufficient evidence to support an excessive force claim as to Plaintiff Thomas, and that the individual Defendants are entitled to qualified immunity. Defendants did not provide individualized arguments as to each Defendant. In fact, Defendants' briefing and the incident reports from the shooting conspicuously failed to specify which officer fired his weapon. *See, e.g.* Exhibit B to Motion for Summary Judgment [68-2], at 3-6. Rather than make individualized arguments as to each officer, Defendants generally argue that Thomas does not have sufficient evidence to show that *any* officer used excessive force. This presents a problem for Defendants, as "each defendant's

7

entitlement to qualified immunity must be considered on an *individual* basis."
*Randle v. Lockwood*, 666 F. App'x 333, 337 n. 7 (5th Cir. 2016) (citing *Meadours v.
Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007)). Defendants have not presented the
Court with any specific argument as to each individual Defendant, and it is not the
Court's job to make such arguments on Defendants' behalf.

Regardless, the Court will address Defendants' collective argument.
Defendants argue that "[i]t is undisputed that Mr. Thomas turned toward the officers
with his hands in his pants," citing the officers' incident reports and the video
statement of Plaintiff Smith. *See* Exhibit B to Motion for Summary Judgment [68-2],
at 3-6; Exhibit C to Motion for Summary Judgment [68-3] (conventionally filed).
Defendants note that Thomas resisted arrest. The body cam videos clearly show
Thomas resist the officers' attempts to cuff him, causing a scuffle. The officers used
tasers on him, and he still resisted after he fell to the ground. Then he managed to
stand and escape the officers' grasps, and he attempted to flee. That moment – when
Thomas was trying to run away – is the relevant point in time for the Court's analysis.
*Freeman*, 483 F.3d at 411 (court applies a standard based on the officer's viewpoint
at the time he applied the force in dispute); *Cole*, 935 F.3d at 456 ("[W]hat matters is
what the defendant . . . knew when [he] shot" the decedent.).

After a thorough review of the officers' body camera videos, the Court concludes
that there is a genuine dispute of material fact as to whether Thomas actually turned
toward the officers with his hands in his waistband, as they claimed in the incident

reports and in briefing before this Court. Indeed, a reasonable person could conclude, after watching the body camera videos, that Thomas never turned back toward Defendants while reaching into his waistband.[2] A reasonable person could conclude that at the moment one of the Defendants shot Thomas, he was running away from them, with his hands at his sides. A reasonable person could conclude that Thomas presented no immediate threat to the officers or anyone else at the moment of the shooting, and that one of the officers simply shot him in the back as he fled.[3] For these reasons, the Court finds that there are genuine disputes of material fact as to the elements of Thomas's excessive force claims and as to key facts relevant to each Defendants' qualified immunity defense. Therefore, the Court denies their motion as to Thomas's excessive force claim.[4]

## B.    § 1983 – False Arrest/Imprisonment

Defendants also argue that Plaintiffs' § 1983 claims of false arrest and false imprisonment fail because there was probable cause for the subject arrests. Plaintiffs did not address this argument in briefing. Therefore, the Court will assume that

---

[2] The Court also notes that it appears to be undisputed that the officers frisked Thomas after he got out of the vehicle, before these events occurred, and they found no weapons. Indeed, the record contains no evidence indicating that the officers had reason to believe that Thomas had a weapon.

[3] The Court also notes that the videos show officers continuing to use their tasers on Thomas after he had been shot and lay on the ground bleeding, apparently incapacitated.

[4] *See, e.g. Cole*, 935 F.3d at 455-56 (where record contained evidence that suspect was facing away from the officers, that he did not turn his weapon toward the officers, and that they did not provide a warning before firing, summary judgment was not warranted); *Snyder v. Trepagnier*, 142 F.3d 791, 799-800 (5th Cir. 1998) (where there was a genuine dispute of material fact as to whether the suspect had a weapon or officers reasonably believed he did, and as to sequence of events, question of qualified immunity was properly submitted to jury); *Baker v. Putnal*, 75 F.3d 190, 198 (5th Cir. 1996) (where record contained evidence that suspect was taking no threatening action at time of shooting and was not facing the officer when he was shot, summary judgment on excessive force claims was not warranted).

Plaintiffs have abandoned this claim. Accordingly, the Court grants Defendants' Motion for Summary Judgment [68] as to Plaintiffs' claims of false arrest and false imprisonment.

Alternatively, to prevail on a § 1983 claim for false arrest or imprisonment, Plaintiffs must prove that Defendants did not have probable cause to arrest them. *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007); *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004). "Probable cause is established by facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019). "When considering what a reasonable person would have concluded, we take into account the expertise and experience of the law enforcement officials." *United States v. Nunez-Sanchez*, 478 F.3 663, 667 (5th Cir. 2007). It doesn't matter whether the offense is a felony or a misdemeanor, or whether the offense was committed in the officer's presence. *Sam v. Richard*, 887 F.3d 710, 715 n. 6 (5th Cir. 2018). Likewise, it doesn't matter if the arrestee was ever charged or convicted of the crime for which the officer arrests him. *Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015). Rather, "to make out a Fourth Amendment claim under either a 'false arrest' or 'illegal detention' theory, the relevant actors must not be aware of facts constituting probable cause to arrest or detain the person for *any* crime." *Id.*

10

Plaintiffs admitted in briefing that an officer found marijuana in their vehicle, and that they were then told to put their hands behind their back to be handcuffed. Plaintiffs also admitted that Plaintiff Thomas then engaged in a "scuffle," with the officers, resisting arrest. Therefore, the Court finds that Defendants had probable cause to arrest Plaintiffs, and their claims of false arrest and false imprisonment under § 1983 fail.

**C.**     ***§ 1983 – Municipal Liability***

Defendants argue that Plaintiff does not have sufficient evidence to sustain a claim of municipal liability under § 1983. The Fifth Circuit provided the following summary of the law concerning municipal liability under § 1983:

> A municipality is not liable under § 1983 on the theory of respondeat superior, but only for acts that are directly attributable to it through some official action or imprimatur. To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of the constitutional injury. The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result.

> Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.

> Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation. In other words, a plaintiff must show direct

> causation, i.e., that there was a direct causal link between the policy and the violation.
>
> A plaintiff must show that, where the official policy itself is not facially unconstitutional, it was adopted with deliberate indifference as to its known or obvious consequences. Deliberate indifference is a degree of culpability beyond mere negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.

*James v. Harris County*, 577 F.3d 612, 617-18 (5th Cir. 2009) (punctuation and citations omitted).

Defendants argue that Plaintiffs have no evidence of a City policy or custom which was the moving force behind the alleged constitutional violations. Plaintiffs did not respond to this argument in briefing. Therefore, they have not directed the Court to any evidence to sustain their burden of proof on this issue, and the Court is not obligated to search through the record on their behalf. *RSR Corp.*, 612 F.3d at 857. Accordingly, the Court grants Defendants' Motion for Summary Judgment [66] as to any § 1983 claims against the City of Laurel or the individual Defendants in their official capacity.

**D.    *§ 1983 – Failure to Train, Supervise***

Defendants argue that the Court should grant summary judgment as to any § 1983 claim against the City of Laurel premised upon its alleged failure to train or supervise its officers because 1) Plaintiffs have no evidence that the City's alleged failure to train or supervise its officers was the moving force behind the alleged constitutional violations, 2) Plaintiffs have no evidence of a specific deficiency in the training provided to the City's officers, and 3) Plaintiffs have no evidence of deliberate

indifference on the part of policymakers responsible for supervising or training the officers. Plaintiffs did not respond to this argument in briefing, and the Court assumes Plaintiffs have abandoned this claim.

A supervisory official can be liable for the unconstitutional actions of his subordinates on a theory of supervisory liability "if (1) the supervisor affirmatively participates in the acts that caused the constitutional deprivation, or (2) the supervisor implements unconstitutional policies that causally result in the constitutional injury." *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018). "In order to establish supervisory liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Id.*

Similarly, "[t]o prevail on a failure-to-train theory, a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018).

As noted above, Plaintiffs did not respond to this argument in briefing. Therefore, Plaintiffs have not directed the Court to any evidence of a deficient training policy, evidence of deliberate indifference by a supervisory official, or evidence that either a deficient training policy or a supervisor's deliberate

indifference caused the alleged constitutional violations in this case. The Court is not obligated to search the record for evidence in support of Plaintiffs' claims. *RSR Corp.*, 612 F.3d at 857. Therefore, the Court grants Defendants' motion as to any § 1983 claims arising from any Defendants' alleged failure to train or supervise the City's employees.

**E.      *Defendant Tommy Cox***

Defendants argue that Plaintiffs have no evidence to support a claim of supervisory liability against Defendant Tommy Cox, the City's Chief of Police. Plaintiffs did not respond to this argument in briefing, and the Court assumes Plaintiffs abandoned their claims against Cox.

A supervisory official can be liable for the unconstitutional actions of his subordinates on a theory of supervisory liability "if (1) the supervisor affirmatively participates in the acts that caused the constitutional deprivation, or (2) the supervisor implements unconstitutional policies that causally result in the constitutional injury." *Pena*, 879 F.3d at 620. "In order to establish supervisory liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Id.*

Plaintiffs have not directed the Court to any evidence that Defendant Cox affirmatively participated in the alleged constitutional violations at issue here, that he implemented unconstitutional policies that caused them, or that he acted or failed

14

to act with deliberate indifference to constitutional violations committed by his subordinates. The Court is not obligated to search the record for evidence in support of Plaintiffs' claims. *RSR Corp.*, 612 F.3d at 857. Therefore, the Court grants Defendants' motion as to any § 1983 claims asserted against Defendant Tommy Cox.

## F.    *Civil Conspiracy*

Defendants argue that Plaintiffs do not have evidence to support a civil conspiracy claim under Mississippi law, and that any conspiracy claim fails pursuant to the intra-corporate conspiracy doctrine. Plaintiffs did not respond to this argument in briefing, and the Court assumes that they have abandoned this claim.

The elements of a civil conspiracy are "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as a proximate result." *Gallagher Bassett Servs. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004). Plaintiffs have not directed the Court to any evidence of these elements, and the Court is not obligated to search the record for evidence to support Plaintiffs' claims. *RSR Corp.*, 612 F.3d at 857.

Also, the intra-corporate conspiracy doctrine provides that a corporate entity cannot conspire with its own officers, employees, or subsidiaries. *See, e.g. Barnett v. Laurel*, 2018 WL 10498654, at *2 (S.D. Miss. Sept. 5, 2018). Although the Mississippi Supreme Court has never addressed the issue, the federal courts in this state have applied the intra-corporate conspiracy doctrine to civil conspiracy claims under

15

Mississippi law, holding that a corporate entity cannot conspire with its own employees or agents. *See Wesley Health Sys., LLC v. Forrest County Bd. of Supervisors*, 2014 WL 232109, at *12 (S.D. Miss. Jan. 22, 2014) (citing cases). Indeed, "[u]nder Mississippi law, a conspiracy is a *combination of persons* for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Gallagher Basset Servs.*, 887 So. 2d at 786 (emphasis added). Two or more parties must come to an agreement to form a conspiracy. *Id.* at 786-87. Therefore, the Defendants – a municipal corporation and its employees – cannot form a conspiracy. For these reasons, the Court grants Defendants' motion as to Plaintiffs' claim of civil conspiracy.

## G.  *State-Law Claims*

Next, Defendants argue that some of Plaintiffs' state-law claims are barred by various provisions of the Mississippi Tort Claims Act ("MTCA"). Plaintiffs did not respond to any of these arguments.

First, Defendants argue that some of Plaintiff's state-law claims are barred by the MTCA's notice requirement. The MTCA codified the common-law sovereign immunity of Mississippi and its political subdivisions, MISS. CODE ANN. § 11-46-3(1), but it waived sovereign immunity "from claims for money damages arising out of torts of . . . governmental entities and the torts of their employees while acting within the course and scope of their employment . . . ." MISS. CODE ANN. § 11-46-5(1). The waiver is subject to numerous conditions, exceptions, and limitations. For example, the

statute provides that "any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity." MISS. CODE ANN. § 11-46-11(1). The Mississippi Supreme Court "strictly applies the ninety-day notice requirement . . . ." *Gorton v. Rance*, 52 So. 3d 351, 358 (Miss. 2011). It "is a hard-edged, mandatory rule." *Id.*

Defendants represented in briefing – and Plaintiffs have not disputed – that Plaintiffs never provided notice as required by the MTCA. Plaintiffs asserted the following state-law claims: negligent hiring/retention/supervision/training, battery, assault, civil conspiracy, negligent infliction of emotional distress, and intentional infliction of emotional distress.

The MTCA provides that government employees "shall not be considered as acting within the course and scope of [their] employment . . . for any conduct" constituting "fraud, malice, libel, slander, defamation or any criminal offense." MISS. CODE ANN. § 11-46-7(2); MISS. CODE ANN. § 11-46-5(2). Mississippi's courts have held that tort claims falling within these excluded categories are outside the scope of the MTCA, *Zumwalt v. Jones County Bd. of Supervisors*, 19 So. 3d 672, 688 (Miss. 2009), and, therefore, the notice requirement does not apply to them. *Idom v. Natchez-Adams Sch. Dist.*, 115 F. Supp. 3d 792, 804 (S.D. Miss. 2015).

Therefore, the notice requirement does not apply to Plaintiffs' claims of

17

intentional infliction of emotional distress,[5] assault,[6] and battery.[7] However, the notice requirement does apply to Plaintiffs' claims of negligent hiring/retention/supervision/training,[8] negligent infliction of emotional distress,[9] and civil conspiracy,[10] and the Court grants Defendants' motion as to those claims.

Next, Defendants argue that the individual Defendants can not be personally liable for actions or omissions within the course and scope of their employment. Plaintiffs did not respond to this argument. Regardless, Defendants are correct.

Under the MTCA, government employees can not be personally liable for "acts or omissions occurring within the course and scope of [their] duties." MISS. CODE ANN. § 11-46-7(2). However, as noted above, a government employee is not "acting within the course and scope of his employment" if his conduct "constituted fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations." *Id*. Therefore, the individual Defendants may not be personally liable for those torts that fall within the scope of the MTCA – negligent hiring/retention/supervision/training,[11] negligent infliction of emotional distress,[12] and civil conspiracy[13] – but the MTCA does not bar their personal liability for Plaintiffs' claims of intentional infliction of

---

[5] *See, e.g. O'Reilly v. Univ. of Miss. Med. Ctr.*, 2019 WL 2583520, at *3 (S.D. Miss. June 24, 2019).
[6] *Brown v. Wilkinson County Sheriff's Dep't*, 2017 WL 1479428, at *9 (S.D. Miss. Apr. 24, 2017).
[7] *Id.*
[8] *See, e.g. Hughes v. City of Southaven, Miss.*, 2019 WL 2503959, at *4 (N.D. Miss. June 17, 2019).
[9] *Id.*
[10] *Aries Building Sys., LLC v. Pike County, Miss.*, 2017 WL 4678225, at *4 (S.D. Miss. Oct. 17, 2017).
[11] *Hughes*, 2019 WL 2503959 at *4.
[12] *Id.*
[13] *Aries Building Sys.*, 2017 WL 4678225 at *4.

emotional distress,[14] assault,[15] and battery.[16]

Finally, Defendants argue that the "police function" provision of the Mississippi Tort Claims Act ("MTCA") applies. Plaintiffs did not respond to this argument in briefing.

The MTCA provides:

(1)   A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

*  *  *

(c)   Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury.

Miss. Code Ann. § 11-46-9(1)(c). "Reckless disregard . . . denotes more than negligence, but less than an intentional act." *City of Jackson v. Lewis*, 153 So. 3d 689, 693 (Miss. 1989). The Mississippi Supreme Court has found "reckless disregard when the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." *Id.* The reckless disregard standard "embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *Phillips v. Miss. Dep't of Public Safety*, 978 So. 2d 656, 661 (Miss. 2008).

---

[14] *O'Reilly*, 2019 WL 2583520 at *3.
[15] *Brown*, 2017 WL 1479428 at *9.
[16] *Id.*

Neither negligence nor gross negligence arise to the level of "reckless disregard." *See Jones v. City of Hattiesburg*, 2018 WL 3624978, at *3 (S.D. Miss. July 30, 2018); *Collins v. City of Newton*, 240 So. 3d 1211, 1222 (Miss. 2018); *Hill v. Hinds County*, 237 So. 3d 838, 842 (Miss. 2017); *Davis v. City of Clarksdale*, 18 So. 3d 246, 249 (Miss. 2009); *Turner v. City of Ruleville*, 735 So. 2d 226, 229-30 (Miss. 1999). Therefore, all Plaintiffs' negligence-based claims against the City and the individual Defendants in their official capacity are barred by the police-function exemption.

As for Plaintiffs' claims of intentional infliction of emotional distress, assault, and battery, the police-function exemption from the MTCA's waiver of sovereign immunity only applies to "[a] governmental entity and its employees acting within the course and scope of their employment or duties." MISS. CODE ANN. § 11-46-9(1). For the purposes of the MTCA, "an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations." MISS. CODE ANN. § 11-46-5(2). This carve-out from the definition of actions "within the course and scope" of government employment encompasses claims of intentional infliction of emotional distress,[17] assault,[18] and battery.[19] Therefore, the police-function exemption from the MTCA's

---

[17] *See, e.g. O'Reilly*, 2019 WL 2583520 at *3.
[18] *Brown*, 2017 WL 1479428 at *9.
[19] *Id.*

waiver of sovereign immunity does not apply to them.

Finally, as for the claim of civil conspiracy, Defendants have not presented any argument as to whether the specific behavior underlying the civil conspiracy claim constitutes "reckless disregard." Moreover, although they have generally argued that Plaintiffs were engaged in criminal activity, they have not demonstrated that the criminal activity has "some causal nexus to the wrongdoing of the tortfeasor," the actions constituting civil conspiracy. *Buchanan v. Gulfport Police Dep't*, 2012 WL 1906523, at *12 (S.D. Miss. May 25, 2012). "The criminal activity must occur contemporaneously with the injury; it is not sufficient that his earlier conduct was criminal." *Id.* Regardless, the Court already granted Defendants' motion as to the civil conspiracy claim pursuant to the MTCA's notice provision.

## H.  *Punitive Damages*

The Court has already dismissed Plaintiffs' § 1983 claim for punitive damages against the City and the individual Defendants in their official capacity. Defendant now argues that the MTCA bars Plaintiffs' state-law claim for punitive damages against all Defendants. Plaintiffs did not respond to this argument in briefing.

The MTCA provides: "No judgment against a governmental entity or its employee for any act or omission for which immunity is waived under this chapter shall include an award for exemplary or punitive damages . . . ." MISS. CODE ANN. § 11-46-15(2); *see also Madison v. Desoto County*, 822 So. 2d 306, 310 (Miss. Ct. App. 2002). Therefore, the Court grants this aspect of Defendants' motion.

21

## IV. Conclusion

For the reasons provided below, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [68]. Specifically, the Court rules as follows:

- the Court grants the motion as to Defendant Smith's § 1983 excessive force claims;

- the Court grants the motion as to Plaintiffs' § 1983 claims for false arrest and false imprisonment;

- the Court grants the motion as to Plaintiffs' § 1983 claims against the City of Laurel and the individual Defendants in their official capacities;

- the Court grants the motion as to Plaintiffs' § 1983 claims arising from Defendants' alleged failure to train or supervise the City's employees;

- the Court grants the motion as to Plaintiffs' § 1983 claims against Defendant Tommy Cox;

- the Court grants the motion as to Plaintiffs' state-law civil conspiracy claims;

- the Court grants the motion as to Plaintiffs' state-law claims of negligent hiring/supervision/training, negligent infliction of emotional distress, and civil conspiracy;

- the Court grants the motion as to Plaintiffs' state-law claim for punitive damages;

- and the Court denies the motion in all other respects.

SO ORDERED AND ADJUDGED this 25th day of March, 2021.

/s/    Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE